Filed 10/31/25  P. v. Vargastavera CA2/7

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>VICTOR ADRIAN VARGASTAVERA,<br><br>    Defendant and Appellant. | B336548<br><br>(Los Angeles County Super. Ct. No. KA129666)<br><br>**ORDER MODIFYING OPINION**<br>[There is no change in appellate judgment] |

THE COURT:

It is ordered that the opinion filed herein on October 13, 2025, be modified as follows:

On page 12, line 4, the citation "*People v. Lopez* (2021) 66 Cal.App.5th 569, 579" should be deleted and replaced with "*People v. Lopez* (2021) 66 Cal.App.5th 561, 579."

There is no change in appellate judgment.

_____

MARTINEZ, P. J.        SEGAL, J.        STONE, J.

Filed 10/13/25  P. v. Vargastavera CA2/7 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>VICTOR ADRIAN VARGASTAVERA,<br><br>        Defendant and Appellant. | B336548<br><br>(Los Angeles County<br>Super. Ct. No. KA129666) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Juan Carlos Dominguez, Judge.  Reversed and remanded with directions.

Christopher Lionel Haberman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Victor Adrian Vargastavera appeals the denial of his motion under Penal Code section 1473.7 to vacate his 2022 conviction by a no-contest plea.[1]  He contends he was unable to defend against and meaningfully understand the adverse immigration consequences of his conviction because of his defense counsel's prejudicial errors.  We conclude Vargastavera has met his burden of establishing error under section 1473.7:  His counsel's attempts to negotiate an immigration-safe plea were insufficient.  Counsel proposed a plea that was unlikely to be accepted by the People, instead of a plea to an alternative, immigration-safe offense that was comparable to the People's offer.  Vargastavera also established by a preponderance of the evidence that, but for his counsel's error, he would not have entered a plea.  Accordingly, we reverse the denial of his motion and direct the superior court to vacate his conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Underlying Facts and Plea Proceedings*

Vargastavera was born in Mexico in 1992.  When he was five years old, he and his family entered the United States unlawfully, without inspection or admission by an immigration officer.  Vargastavera remained in the United States for the next 25 years, married a United States citizen, and had two children.

According to the probation report in this case, on February 25, 2022, at 3:00 a.m., Vargastavera was driving a stolen vehicle when police officers attempted to pull him over for traffic violations.  Vargastavera failed to stop, drove on the wrong

---

[1]    Further undesignated statutory references are to the Penal Code.

side of the road, ran stop signs, and sped up to 60 miles per hour in a 35-miles-per-hour zone. Police officers eventually apprehended Vargastavera after he got out of the stolen vehicle and fled on foot. A search of the stolen vehicle revealed two shotgun shells. Vargastavera admitted that he possessed the shotgun shells and knew the vehicle had been stolen.

The People charged Vargastavera with fleeing a pursing police officer while driving against traffic (Veh. Code, § 2800.4; count 1), unlawful possession of ammunition by a felon (Pen. Code, § 30305, subd. (a)(1); count 2), and driving or taking a vehicle without the owner's consent (Veh. Code, § 10851, subd. (a); count 3). The People further alleged that Vargastavera had two prior felony convictions, including second-degree burglary (Pen. Code, § 459) from December 13, 2021 (case No. FWV210041), and carrying a concealed weapon (Pen. Code, § 25400, subd. (a)(2)) from December 20, 2021 (case No. KA128053).

In March 2022 Vargastavera pleaded no contest to count 1, fleeing a pursuing police officer while driving against traffic, and count 3, driving a vehicle without consent. As we discuss below, count 1 carried immigration consequences. During the plea hearing, defense counsel stated: "For the record, I spoke with [the prosecutor] and requested an immigration neutral disposition in this matter. That request was denied." The prosecutor added: "And the reason for that is that he is currently on two grants of probation."

The court accepted Vargastavera's plea and sentenced him to 16 months in prison for fleeing a pursuing officer while driving against traffic and a concurrent term of 16 months for driving or taking a vehicle without consent. The court dismissed the

3

remaining count 2.  The court also found that Vargastavera violated the terms of his probation in case No. KA128053 (carrying a concealed weapon) and sentenced him to a concurrent term of 16 months.

B.      *Section 1473.7 Proceedings*
        1.      *Motion to vacate convictions*
On September 13, 2023, Vargastavera filed a motion to vacate his conviction under section 1473.7, alleging he was unable to understand, defend against, and knowingly accept the immigration consequences of his plea due to prejudicial error.

Vargastavera submitted a declaration stating he is a citizen of Mexico and has been in the United States since 1997, when he was five years old.  He claimed that, before he pleaded no contest, his public defender "was not specific in his immigration advice," "did not consult with an immigration attorney to verify that [his] conviction [would] affect" him, and "merely asked the District Attorney for an immigration safe plea."

He described that, at the time of his plea, his wife was a United States citizen, and they had two children, ages nine and five.  Additionally, "all [his] siblings and extended family members lived in the United States."  He further said that "[i]f the public defender had explained that [his conviction would] affect [his] immigration status [he] would have never agreed" to plead no contest.  He "would have done everything [he] could to fight and make sure that [he] could stay [in the United States] with his family."  Specifically, he stated he "would have opted for immigration safe options" or "would have asked [his] public defender to fight [his] case in trial."  He "had no intention of abandoning [his] family."

4

He also stated he was in Immigration and Customs Enforcement detention facing removal from the United States. He claimed he was ineligible for relief from removal in the form of cancellation of removal under 8 U.S.C. § 1229b(b), because his Vehicle Code section 2800.4 conviction rendered him statutorily ineligible.

In addition to his declaration, Vargastavera submitted a "Notice to Appear" from the Department of Homeland Security, dated April 17, 2023, notifying him to appear before an immigration judge to show why he should not be removed from the United States. The notice states Vargastavera is subject to removal from the United States because he is "an alien present in the United States without being admitted or paroled."

2. *Hearing*

At a hearing on January 9, 2024, at which Vargastavera was not present,[2] Vargastavera's former defense attorney who represented him during the 2022 plea, Walter Munoz, testified. Munoz testified that prior to the plea, he reached out to the prosecutor to negotiate an "immigration safe plea." Munoz first proposed Vargastavera could plead to an unspecified misdemeanor, which the prosecutor rejected, and then Munoz proposed a sentence of less than a year in custody, which the prosecutor also rejected.

According to Munoz, he offered those terms because he believed a misdemeanor was not a crime of moral turpitude for immigration purposes and a sentence of less than a year "t[ook] the offense out of an aggravated felony status." After those two offers, he did not make any others because, as he explained, "the

_____

[2]    Vargastavera was in immigration custody.

5

discussion was more or less this is what I was seeking." Also, the prosecutor "indicated to [him] that she was not interested in making any other further concessions" given Munoz "had two grants of probation."

Munoz testified that it was his practice as a public defender to "go over" the plea form with defendants. It was also his practice to determine whether defendants are citizens of the United States, advise them of immigration consequences, and advise them "that they have an absolute right to fight their case and [have] a jury trial." In Vargastavera's case, Munoz determined Vargastavera was not a United States citizen and "advised him that he would be deported, denied reentry, and excluded as a result of this conviction."

The prosecutor who handled Vargastavera's case at the time of his plea was present at the hearing and represented to the court[3] that "the 16-month offer" was "the best offer [Vargastavera] was going to get" because he "was on probation in two different counties on two different felonies." Although she was authorized to "find alternative dispositions," she said she "was not willing to negotiate for any alternative because of [Vargastavera's record,] . . . the fact that he kept this revolving door with the criminal justice system[,] and he was aware of the possible consequences." She added, "I could say with a degree of certainty I wouldn't have budged on this case."

The court denied Vargastavera's motion to vacate his plea. The court reasoned that Vargastavera "was well aware of his immigration consequences" and Munoz "did everything that he

---

[3] The prosecutor did not testify under oath. Vargastavera did not object during the hearing and does not raise the issue on appeal.

could to alleviate any immigration collateral consequences."  The court also did not find credible Vargastavera's declaration that he would have rejected the plea and taken the case to trial.

Vargastavera timely appealed.

## DISCUSSION

A.    *Governing Law and Standard of Review*

As relevant here, section 1473.7 provides:  "A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence" if "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence."  (§ 1473.7, subd. (a)(1).)  "The court shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of . . . [such] grounds for relief."  (*Id*., subd. (e)(1).)  The moving party must "also establish that the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization."  (*Ibid*.)

To prevail under section 1473.7, a petitioner must first show that an error occurred—specifically, that he or she was unable to either meaningfully understand, defend against, or knowingly accept the immigration consequences of his conviction. (See § 1473.7, subd. (a)(1); *People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*); *People v. Padron* (2025) 109 Cal.App.5th 950, 958 (*Padron*).)  "The focus of this showing is 'the "*defendant's own error*." ' "  (*Padron*, at pp. 958-959.)  To establish error, a petitioner "may, but need not," prove he received ineffective

7

assistance from his counsel.  (§ 1473.7, subd. (a)(1); see *Padron*, at p. 959.)  " '[E]ven if the motion is based upon errors by counsel, the moving party need not also establish a Sixth Amendment violation as by demonstrating that "counsel's representation 'fell below an objective standard of reasonableness' " . . . " 'under prevailing professional norms.' " ' "  (*People v. Benitez-Torres* (2025) 112 Cal.App.5th 1252, 1268 (*Benitez-Torres*).)

Next, a section 1473.7 petitioner must demonstrate that the error was "prejudicial."  (§ 1473.7, subd. (a)(1); see *People v. Vivar* (2021) 11 Cal.5th 510, 528 (*Vivar*).)  In the context of a conviction by plea, a defendant must demonstrate a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood or adequately defended against its actual or potential immigration consequences.  (See *Vivar*, at p. 529; *People v. Martinez* (2013) 57 Cal.4th 555, 565 (*Martinez*) [defendant can show prejudice by "convinc[ing] the court [that he] would have chosen to lose the benefits of the plea bargain despite the possibility or probability deportation would nonetheless follow"].)  "A reasonable probability does not mean more likely than not.  [Citation.]  Instead, it means merely a reasonable chance, which is more than an abstract possibility." (*People v. Carrillo* (2024) 101 Cal.App.5th 1, 19 (*Carrillo*).)

We independently review the denial of a section 1473.7 motion.  (*Espinoza*, *supra*, 14 Cal.5th at p. 319.)  Under this standard, we exercise our " ' "independent judgment to determine whether the facts satisfy the rule of law." ' "  (*Id.* at pp. 319-320; see *Vivar*, *supra*, 11 Cal.5th at p. 527.)  We "must give deference to the trial court's factual determinations if they are based on ' " 'the credibility of witnesses the [superior court] heard and observed.' " ' "  (*Espinoza*, at p. 320; see *Vivar*, at p. 527.)  Where

8

the trial court's findings " 'derive entirely from written declarations and other documents,' the trial court and the reviewing court ' "are in the same position," ' and no deference is owed." (*Espinoza*, at p. 320; see *Vivar*, at p. 528.)

B.   *Vargastavera Established Error Affecting His Ability To Defend Against the Immigration Consequences of His Plea*
   1.   *Vargastavera's conviction caused actual immigration consequences*

At the time of Vargastavera's plea he was facing three felony charges, and the immigration consequences of each charge were different.

Count 1, fleeing a pursing officer while driving against traffic, constitutes a "crime of moral turpitude" for immigration purposes. (*Moran v. Barr* (9th Cir. 2020) 960 F.3d 1158, 1162 (*Moran*).) Subject to exceptions not applicable here, "a noncitizen without lawful status who is convicted of a crime of moral turpitude is ineligible for . . . cancellation of removal." (*People v. Curiel* (2023) 92 Cal.App.5th 1160, 1174 (*Curiel*); see 8 U.S.C. §§ 1182(a)(2)(A)(i)(I), 1229b(b)(1)(C); *Lemus-Escobar v. Bondi* (9th Cir. 2025) 140 F.4th 1079, 1093.) Cancellation of removal is a discretionary form of relief that allows the government to "cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien" meets specific criteria.[4] (8 U.S.C. § 1229b(b)(1); see *People v. Villalba* (2023)

---

[4]   "The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien—[¶]  (A) has been physically present in the United

9

89 Cal.App.5th 659, 666.) Vargastavera was charged as removable for being present in the United States without inspection or admission. (8 U.S.C. § 1182(a)(6)(A)(i).) Once Vargastavera was placed in removal proceedings, his conviction for fleeing a pursing officer while driving against traffic, a crime of moral turpitude, rendered him statutorily ineligible for cancellation of removal. (See 8 U.S.C. § 1229b(b)(1)(C); *Wilkinson v. Garland* (2024) 601 U.S. 209, 213.)

Count 2, possession of ammunition by a felon, constitutes an "aggravated felony" for immigration purposes. (See 8 U.S.C. § 1101(a)(43)(E)(ii) [an offense described in 18 U.S.C. section 922(g)(1) is an aggravated felony]; 18 U.S.C. § 922(g)(1) [it is unlawful for any person who had been convicted of a crime punishable by imprisonment for a term exceeding a year to possess any ammunition]; *Oppedisano v. Holder* (2d Cir. 2014) 769 F.3d 147, 149 [unlawful possession of ammunition by a felon qualifies as an aggravated felony].) "A noncitizen who is convicted of an aggravated felony is subject to mandatory deportation and permanent exclusion from the United States." (*Curiel*, *supra*, 92 Cal.App.5th at p. 1174.) "An aggravated felony conviction also renders a noncitizen ineligible for certain types of discretionary relief from deportation, such as asylum and

States for a continuous period of not less than 10 years immediately preceding the date of such application; [¶] (B) has been a person of good moral character during such period; [¶] (C) has not been convicted of an offense under section [1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title,] subject to paragraph (5); and [¶] (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." (8 U.S.C. § 1229b(b)(1).)

cancellation of removal." (*Ibid*.; *accord, People v. Manzanilla* (2022) 80 Cal.App.5th 891, 904 (*Manzanilla*).) Vargastavera did not plead to this count, and it was dismissed pursuant to the plea agreement.

Count 3, driving or taking a vehicle without consent, is neither a crime involving moral turpitude nor an aggravated felony for immigration purposes. (See *Lopez-Marroquin v. Garland* (9th Cir. 2021) 9 F.4th 1067, 1069 [not an aggravated felony]; *Almanza-Arenas v. Lynch* (9th Cir. 2016) 815 F.3d 469, 473 [not a crime against moral turpitude].) Vargastavera's plea to this count thus had no automatic effect on his immigration status.

2. *Defense counsel did not adequately defend against the immigration consequences of his plea*

Vargastavera contends he was unable to defend against the immigration consequences of his plea because Munoz did not "investigat[e] alternative pleas that would result in an immigration neutral disposition . . . and negotiat[e] for them." We agree.

In *Padilla v. Kentucky* (2010) 559 U.S. 356 (*Padilla*), the United States Supreme Court acknowledged that a defendant's legal counsel has a duty to "plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce[s] the likelihood of deportation, as by avoiding a conviction for an offense that automatically triggers the removal consequence." (*Id.* at p. 373.) California subsequently codified this holding in 2015 (§ 1016.2) and added to the Penal Code a specific duty of counsel to "provide accurate and affirmative advice about the immigration consequences of a proposed disposition, and . . . defend against those consequences."

11

(§ 1016.3, subd. (a); see *Benitez-Torres, supra*, 112 Cal.App.5th at p. 1262.)

Munoz's testimony demonstrates he failed to bargain creatively with the prosecutor to reduce the likelihood of immigration consequences. Making "some effort at negotiating an immigration-neutral disposition," as Munoz did here by proposing a plea to a misdemeanor or to a sentence of less than a year,[5] does not necessarily satisfy counsel's duty to defend against immigration consequences. (*People v. Lopez* (2021) 66 Cal.App.5th 569, 579 (*Lopez*) [defense counsel failed to adequately defend against defendant's felony charge of possession of a controlled substance for sale despite counsel's "attempt to negotiate" a plea to a misdemeanor count of simple possession]; see *Manzanilla, supra*, 80 Cal.App.5th at pp. 907-908 [defense counsel's attempt to "[s]imply request[] jail terms of six and nine months" for a felony count of domestic violence that carried a maximum sentence of four years in prison "was insufficient" and did "not absolve her of her failure to defend"].)

Munoz's proposed plea to a sentence of less than one year was insufficient. It was not likely to be accepted by the prosecutor. Munoz was facing three felonies and was on

---

[5] Munoz testified that he proposed a plea agreement to a sentence of less than one year in custody because he believed it "t[ook] the offense out of an aggravated felony status." This was incorrect. Indeed, count 2, possession of ammunition by a felon, is an aggravated felony regardless of the sentence imposed. (8 U.S.C. § 1101(a)(43)(E)(ii); 18 U.S.C. § 922(g)(1); see also *Benitez-Torres, supra*, 112 Cal.App.5th at p. 1263 ["long-standing federal 'precedents hold that whether a state classifies an offense as a 'misdemeanor' is irrelevant to determining whether it is an 'aggravated felony' for purposes of federal law' "].)

probation for two additional felonies. (See *Manzanilla, supra*, 80 Cal.App.5th at pp. 898, 907-908 [defense counsel failed to make a counteroffer of 364 days to prosecution's initial offer of 365 days, "which was more likely to be accepted by the prosecution than the more significant sentence reductions she sought of six or nine months"]; *Lopez, supra*, 66 Cal.App.5th at pp. 579-580 ["It is hardly surprising . . . that the prosecutor refused an offer to plead to one misdemeanor when three felonies were charged."].)

Instead, as Vargastavera argues, Munoz could have tried to negotiate a plea to a felony violation of Vehicle Code section 2800.2, which is comparable to count 1 (Vehicle Code section 2800.4) but immigration neutral. (See *Ramirez-Contreras v. Sessions* (9th Cir. 2017) 858 F.3d 1298, 1301-1302 [Vehicle Code section 2800.2 is not a crime of moral turpitude].) First, the offenses are similar enough that Vargastavera's conduct is captured by both. Vehicle Code section 2800.2 penalizes a person who "flees or attempts to elude a pursuing peace officer" and drives "in a willful or wanton disregard for the safety of persons or property." (Veh. Code, § 2800.2, subd. (a).) Vehicle Code section 2800.4 penalizes a person who "willfully flees or attempts to elude a pursuing peace officer" and "willfully drives that vehicle on a highway in a direction opposite to that in which the traffic lawfully moves upon that highway." (Veh. Code, § 2800.4.) Second, the available sentences for the offenses are the same, carrying the same felony sentencing range of 16 months, or two or three years in state prison. (Pen. Code, § 18, subd. (a); Veh. Code, §§ 2800.2, 2800.4.)

The fact that Vehicle Code section 2800.2 is comparable to the Vehicle Code section 2800.4 offense charged in count 1 demonstrates the strength of a proposed plea to this offense. Yet,

13

Munoz testified that he stopped negotiating after his two proposals because, as he stated, "the discussion was more or less this is what I was seeking." This defense strategy was insufficient. Considering the People were willing to offer a plea to Vehicle Code section 2800.4 with a sentence of 16 months in prison, Munoz could have proposed not only an equivalent offense, but also a *greater* sentence. (See *Manzanilla, supra,* 80 Cal.App.5th at p. 902 [counsel's defense was insufficient because he failed to counter the prosecution's initial offer of 365 days' jail with "a more reasonable offer"].) A greater sentence would not have resulted in automatic adverse immigration consequences.[6] Thus, because Munoz failed to adequately "defend against" immigration consequences, Vargastavera has

---

[6] An individual is ineligible for cancellation of removal if he or she is "convicted of [two] or more offenses (other than purely political offenses), regardless of whether the conviction was in a single trial or whether the offenses arose from a single scheme of misconduct and regardless of whether the offenses involved moral turpitude, for which the aggregate sentences to confinement were [five] years or more." (8 U.S.C. § 1182(a)(2)(B); see 8 U.S.C. § 1229b(b)(1)(C); *Ramirez-Medina v. Garland* (9th Cir. 2021) 21 F.4th 586, 558-589.) Based on the probation report, Vargastavera was sentenced for his prior convictions to a total aggregate term of roughly two years 10 months, consisting of 364 days in jail (for carrying a firearm) plus 16 months in prison (for violating probation) and 180 days in jail (for second degree burglary). Thus, in the instant case, he could have negotiated a total maximum sentence of about two years one month without becoming statutorily ineligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(C).

14

established error under section 1473.7.[7]  (See *Lopez, supra*,
66 Cal.App.5th at pp. 579-580 [counsel's lack of understanding of
the relevant law impeded his ability to defend against
immigration consequences].)

C.     *Vargastavera Has Established Prejudice*

Vargastavera has also established a reasonable probability
that he would have rejected the plea deal had he adequately
defended against the immigration consequences.

"The prejudice inquiry turns on 'the totality of the
circumstances,' including 'the defendant's ties to the United
States, the importance the defendant placed on avoiding
deportation, the defendant's priorities in seeking a plea bargain,
and whether the defendant had reason to believe an immigration-
neutral negotiated disposition was possible.' " (*Padron, supra*,
109 Cal.App.5th at p. 959, quoting *Vivar, supra*, 11 Cal.5th at
pp. 529-530.)  "These factors are not exhaustive, and no single
type of evidence is a prerequisite to relief." (*Espinoza, supra*,
14 Cal.5th at p. 321.)

Several factors weigh in favor of finding Vargastavera was
prejudiced.  First, Vargastavera demonstrated significant ties to
the United States.  "Ties to the United States are an important
factor in evaluating prejudicial error under section 1473.7
because they shed light on a defendant's immigration priorities.
. . .  Depending on the strength of a defendant's community ties,

_____

[7]     Because we conclude defense counsel did not adequately
defend Vargas against immigration consequences, we need not
address his second contention that defense counsel did not
specifically advise him of the immigration consequences of his
plea.

15

'the prospect of deportation' may be . . . ' "the most important part" ' of the defendant's 'calculus in responding to certain criminal charges.' " (*Espinoza*, *supra*, 14 Cal.5th at p. 321.) Such "ties may be established by length of residence; immigration status; lack of connection to the country of origin; connections to family, friends, or the community; work history or financial ties; or other forms of attachment." (*Ibid*.)

Vargastavera's declaration establishes that he came to the United States from Mexico as a very young child, and at the time of his plea in 2022, he had lived in the United States for about 25 years. He was married to a United States citizen and had two young United States citizen children. He "had no family in Mexico"—all his siblings and extended family lived in the United States. Vargastavera asserted he "would have done everything [he] could to fight and make sure that [he] could stay [in the United States] with [his] family." Vargastavera's "deep and long-standing ties . . . weigh in favor of finding that he would have considered immigration consequences to be of paramount concern in deciding whether to accept a plea agreement." (*Espinoza*, *supra*, 14 Cal.5th at p. 322 [prejudice established where defendant spent most of his life in the United States, his wife and five children were United States citizens, and his parents and siblings lived in the United States]; *Vivar*, *supra*, 11 Cal.5th at p. 530 [same where defendant's declaration showed he "had virtually no ties to Mexico"]; *People v. Lopez* (2022) 83 Cal.App.5th 698, 708 [same where defendant moved to the United States at 13 years old, his entire family lived there, and he lacked meaningful ties to his country of origin].)

The trial court found that Vargastavera's assertion in his declaration that he "would have done everything [he] could to

16

fight" his case was not credible. The People argue we must give deference to the court's finding and reject Vargastavera's "self-serving" declaration. The People are mistaken in asserting the trial court's finding must be accorded deference on independent review. Vargastavera was not present at the evidentiary hearing to provide any live testimony, and the trial court based its finding entirely on Vargastavera's written declaration. While Munoz testified, he addressed only his efforts as a defense attorney, not Vargastavera's personal priorities in his case. Where, as here, a finding is based on a cold record, we review such a finding independently. (*Espinoza*, *supra*, 14 Cal.5th at pp. 319-320 ["no deference is owed" when findings derive entirely from written declarations]; *Vivar*, *supra*, 11 Cal.5th at p. 533 ["the Court of Appeal was mistaken in believing the trial court's factual findings, which were based entirely on a cold record, 'must be accorded deference' "].)

Reviewing Vargastavera's declaration under that standard, we do not defer to the trial court's finding. Vargastavera's strong ties to the United States, as evidenced in his declaration, "constitute contemporaneous objective facts that corroborate [his] concern about the immigration consequences of his plea options." (*Vivar*, *supra*, 11 Cal.5th at p. 530; accord, *Espinoza*, at p. 321.)

Second, in addition to establishing strong ties to the United States and concern about avoiding immigration consequences, Vargastavera established that he " 'had reason to believe an immigration-neutral negotiated disposition was possible.' " (*Espinoza*, *supra*, 14 Cal.5th at p. 323.) "Factors relevant to this inquiry include the defendant's criminal record, the strength of the prosecution's case, the seriousness of the charges or whether the crimes involved sophistication, the district attorney's

17

charging policies with respect to immigration consequences, and the existence of comparable offenses without immigration consequences." (*Ibid*.) At the heart of this inquiry is not whether "the prosecution would have offered a different bargain," but rather whether there is "evidence that would have caused *the defendant* to expect or hope a different bargain would or could have been negotiated." (*Martinez, supra*, 57 Cal.4th at p. 567, italics added; see *Espinoza*, at p. 324 ["a relevant consideration is the probability of obtaining a more favorable outcome" and that question "is informed by whether the defendant would have had reason 'to expect or hope' that a plea deal without immigration consequences 'would or could have been negotiated' "]; *Vivar, supra*, 11 Cal.5th at p. 529 [when a court weighs whether a defendant would have expected to negotiate a different bargain, "it need not decide whether the prosecution would actually 'have offered a different bargain' "].)

Vargastavera concedes that "he had two prior felony convictions for which he was on probation at the time he committed this offense." (See *Espinoza, supra*, 14 Cal.5th at p. 324 ["a defendant without an extensive criminal record may persuasively contend that the prosecutor might have been willing to offer an alternative plea without immigration consequences"].) He also concedes the prosecution's case "appears . . . strong." However, we agree with Vargastavera there are other factors that indicate he would have had reason to hope for a different bargain. (See *Padron, supra*, 109 Cal.App.5th at pp. 964-965 [defendant established prejudice even though he had a criminal record and "the evidence against him presented 'a strong case' "].)

For instance, Vargastavera pleaded no contest at his very first court appearance, after spending only five days in custody

18

and waiving a preliminary hearing. Had he been aware of the specific immigration consequences and the existence of alternative immigration-safe pleas, he could have "tested the prosecution's resolve" and devoted more time to negotiating. (See *Padron, supra*, 109 Cal.App.5th at pp. 955, 965 [reasonable probability defendant would have had reason to hope for a better bargain where defendant pleaded before the preliminary hearing and "[a]fter meeting with his public defender twice"]; *People v. Rodriguez* (2021) 68 Cal.App.5th 301, 326 [same where defendant "hardly negotiated" and thus "never tested the prosecution's resolve"].)

Further, as discussed, Vargastavera's case presented strong negotiating opportunities and alternatives to a plea to Vehicle Code section 2800.4 that were never explored. That Vargastavera could have offered to plead to the comparable but immigration neutral offense of violating Vehicle Code section 2800.2, with an agreement to serve a lengthier prison sentence, supports Vargastavera's assertion that he had reason to expect or hope for a plea bargain without immigration consequences.

The People point to the prosecutor's statement at the evidentiary hearing that "the 16-month offer" was "the best offer [Vargastavera] was going to get." Based on this fact, the People argue "there is nothing, other than [Vargastavera's] pure speculation, to support . . . that . . . an alternative immigration-neutral plea . . . would have been offered and accepted." But, as noted, the test for prejudice is not whether the prosecutor would have actually offered and accepted the plea. (*Vivar, supra*, 11 Cal.5th at p. 529.) Rather, the focus is on what the defendant would have done. (*Ibid*.) Considering Vargastavera never tested the prosecution's resolve, the charges were not "serious" within

19

the meaning of section 1192.7, subdivision (c)(1), and the alternative immigration-safe plea could have involved a lengthier prison sentence than what the prosecution initially offered, he raised more than an abstract possibility that he reasonably could have hoped for a better deal. (See *Padron*, *supra*, 109 Cal.App.5th at pp. 964-965 [defendant "may have reasonably hoped to secure a[n immigration-safe] plea" despite evidence the prosecution would not extend such a plea offer]; *Curiel*, *supra*, 92 Cal.App.5th at p. 1180 [rejecting People's argument "that the record fails to demonstrate that any of these proposed plea deals would have been offered by the prosecutor or accepted by the court"]; *People v. Lopez*, *supra*, 83 Cal.App.5th at p. 719 ["the Attorney General places far more weight on whether an immigration-neutral disposition would have been offered by the prosecutor and accepted by the trial court than this factor deserves in the court's consideration of the 'totality of circumstances' "]; *Manzanilla*, *supra*, 80 Cal.App.5th at p. 913 [defendant "had reason to believe an immigration-neutral disposition was possible, because all he needed was a one-day reduction in jail time" from the sentence the prosecution had offered].)

Additionally, the probability of obtaining a more favorable outcome is "only one factor for the trial court to consider when assessing the credibility of a defendant's claim that he or she would have rejected the plea bargain if properly advised." (*Martinez*, *supra*, 57 Cal.4th at p. 564; see *Padron*, *supra*, 109 Cal.App.5th at p. 964 [whether the defendant "could have secured a more favorable plea deal or prevailed at trial does not conclusively determine whether he established prejudice under section 1473.7"].) " 'The decision whether to plead guilty also

20

involves assessing the respective consequences of a conviction.' " (*People v. Mejia* (2019) 36 Cal.App.5th 859, 872.)  As discussed, Vargastavera had been in this country for almost his whole life and had no ties to Mexico, and he asserts he would have gone to trial to avoid abandoning his family.  Based on these facts, we conclude that, even if the deck was stacked against him during plea negotiations, his immigration status was demonstrably so important to him "that he would have gone to trial if that was his only hope of avoiding" immigration consequences.  (*Lopez, supra*, 66 Cal.App.5th at p. 581; see *Martinez*, at p. 564 ["a defendant might decline to accept an offer if there is little to lose by rejecting it, particularly if acceptance would have significant adverse consequences"]; *Mejia*, at p. 871 [prejudice occurs when there is a reasonable probability that the person "would have risked going to trial (even if only to figuratively throw a 'Hail Mary')—had the person known that the guilty plea would result in mandatory and dire immigration consequences"].)

## DISPOSITION

The order denying Vargastavera's section 1473.7 motion is reversed, and the case is remanded with directions to grant the motion, vacate the conviction, and permit Vargastavera to withdraw his plea.


                                        STONE, J.

We concur:



            MARTINEZ, P. J.                    SEGAL, J.


21